IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE ROBERT B. KUGLER

| | | |
|---|---|---|
| ELEVATOR MEDIA, INC., | : | |
| Plaintiff(s), | : | |
| v. | : | Civil No.  03-6007(RBK) |
| JOHN B. HOFFMAN, et al, | : | Rule 52 FINDINGS OF FACT |
| | : | AND CONCLUSIONS OF LAW |
| Defendant(s). | : | |

## **INTRODUCTION**

Plaintiff is a Delaware Corporation owned and operated by Daniel Bornstein.  He claims to have developed a unique and profitable concept for selling advertising posters for placement in elevators and laundry rooms.  Defendant John B. Hoffman owns and operates defendant Applied Media, Inc.  On November 13, 2002, Bornstein and Hoffman, through their respective companies, signed two agreements, a Licensing Agreement and a Management Services Agreement.  Hoffman was to enter the elevator advertising business as a licensee of Elevator Media.

Plaintiff claims defendants violated these agreements, haven't paid what they owe, and seek damages and injunctive relief.  Damages consist of a claimed balance due of $90,000, for the license as well as 30% of all revenue received by defendants.  Defendant denies any breach, denies any payments are due, and seeks return of a $10,000, deposit.

The Court heard testimony on January 8, 2004, January 9, 2004 and January 15, 2004, and on January 30, 2004, denied plaintiff's motion for a Preliminary Injunction. After an appeal (since dismissed) and discovery, the Court held a non-jury trial on August 16, 2006. The parties elected to rely heavily on the prior testimony but presented additional testimony from Hoffman and Bornstein. Counsel submitted additional financial records of defendant Applied Media, by letter dated August 17, 2006.

Jurisdiction is based upon diversity of citizenship, 28 U.S.C. §1332(a). The following represents the Court's findings of fact and conclusions.

## FINDINGS OF FACT

1. In 2001, Donald Bornstein formed plaintiff Elevator Media, Inc., for the express purpose of licensing and franchising an elevator and laundry room business which he had started in New York. 5T[1]: 68-17 to 69-6; 1T:62-24 to 63-9.

2. Bornstein approached a potential franchisee/licensee named David L. Bartholomew in late 2000. 2T:200-15.

3. Bornstein explained his concept and Bartholomew paid him $10,000. 2T:202-19. It is not at all clear what Bartholomew hoped to get out of that relationship. 2T:200-20 to 203-11; 2T:218-5.

4. Bartholomew introduced Bornstein to John B. Hoffman. 2T:204-1 to 9.

---

[1] 1T refers to the transcript of January 8, 2004
 2T refers to the transcript of January 9, 2004
 3T refers to the transcript of January 15, 2004
 4T refers to the transcript of January 30, 2004
 5T refers to the transcript of August 16, 2006

5. Bornstein and Hoffman signed two documents on November 13, 2002.[2] One was titled as a Licensing Agreement. Ex. P-2. The other was titled a "Management Services Agreement." Ex. P-3.

6. The Licensing Agreements produced at trial by the two parties were different. 2T:179-14 to 180-4. Plaintiff's copy had a restrictive covenant. Defendants' did not. 2T:175-10 to 16. No one could explain why.

7. Neither Licensing Agreement contains an amount for the licensing fee. Ex. P-2. Bornstein believed it was to be $100,000. 1T:30-17. Hoffman paid a $10,000 "deposit". 1T:30-12. Ex. P-4. There is a notation on Hoffman's check which states "Deposit for License." Ex. P-4. Hoffman believed there was no agreement as to any further payments and he could get the $10,000, back if the business didn't work. 2T:149-25 to 150-12. Bartholomew, who was present for the negotiations and signing of the agreements, testified the $10,000, was a "good faith payment" to "get started." 2T:207-19 to 208-22. Hoffman, according to Bartholomew, was to pay an additional $90,000, once he had 250 units (elevators). 2T:208-23 to 209-6. Moreover, again according to Bartholomew, if the business wasn't successful, Bornstein would give the money back. 2T:209-7 to 210-7. The Elevator Media Disclosure Statement, which Bornstein expected Hoffman would read and rely upon, 3T:337-24, provides for an "initial" payment of $125,000, by the franchisee. Ex. P-13.

8. Neither original License Agreement contains any specific territorial limitation ("protected area"). It was left blank. Ex. P-2. Bornstein believed he had an agreement that Hoffman would be restricted to Montgomery County, Pennsylvania. 1T:33-6 to 34-14. Hoffman didn't

---

[2]There was an earlier confidentiality agreement which is not at issue here.

believe there was any restriction to Montgomery County. 2T:172-8 to 174-2, and in fact believed there was no territorial restriction. 2T:235-21 to 238-4. Bornstein knew Hoffman was soliciting property owners outside Montgomery County and never complained. 2T:237-2 to 238-4. Bartholomew testified there was an agreement limiting Hoffman to Montgomery County, 2T:206-21, except that Hoffman could seek business in Mt. Airy, Pennsylvania, which is in Philadelphia and not Montgomery County. 2T:207-2 to 13.

    9. The Licensing Agreement contains an integration clause prohibiting any modification or amendment except "by mutual written agreement of the parties." Ex. P-2.

    10. Bornstein and Hoffman (individually) signed a "Management Services Agreement" (MSA) on November 19, 2002. Ex. P-3. Some portions are blank, such as the name of the licensee, the "Representations and Warranties By Licensee," and name and address of licensee for service of notices.

    11. The MSA provides that in exchange for 30% of all the licensee's revenues, Elevator Media would provide "all 'back office' support systems." This would include "assistance in production of a mock up for approval of all advertising posters," locating matching frames and have them cut to size and delivered with their mastic backing, receive all monies due to licensee that have been collected by licensee and transferred to Elevator Media, see that all accounts payable of licensee resulting from the operation of this license are paid, setting up with the bank a web-site for licensee to monitor its account, and production of all reports. Ex. P-3.

    12. Defendants have not paid any money to plaintiff pursuant to the MSA. 3T:291-10 to 20.

    13. Plaintiff did not provide any substantial assistance in the production of advertising poster-mock ups for approval. 3T:263-20.

    14. Plaintiff did not provide any assistance in the final production of advertising posters. 3T:264-5.

15.  Plaintiff did not provide any assistance in locating matching frames and have them cut to size and delivered with their mastic backing.  3T:264-8.

16.  Plaintiff did not pay any accounts payable.  3T:264-14.

17.  Plaintiff did not set up a bank web-site for defendant to monitor its account.  3T:264-17.

18.  Plaintiff did not provide any reports.  3T:264-2.

19.  Defendants' business is not, and has not been, profitable.  Ex. P-9, par. 15; 2005 Applied Media, Inc., IRS Form 1120S; 5T:28-21.

20.  Bornstein promised Hoffman he (Bornstein) would at the beginning provide five elevators in a "showcase building" to start the business.  2T:235-ll to 16.  Bornstein didn't do it.  2T:215-16.

21.  Hoffman asked Bornstein a few times to provide proof that the prior New York elevator advertising business was successful.  2T:216-2 to 16; 2T:234-20 to 235-3.  Bornstein said that wasn't necessary and didn't provide any information.  Id.

22.  None of the witnesses, Bornstein, Hoffman and Bartholomew are very credible.

## **CONCLUSIONS OF LAW**

**A.** Plaintiff failed to sustain its burden of proving that it and defendants had an agreement for defendants to pay a licensing fee of $100,000. At best, plaintiff proved that if defendants' business was successful, defendant would pay additional, unspecified, sums to plaintiff. Defendants' business is not, and has not been, successful. Plaintiff clearly failed to help make defendants' business successful. Consequently, plaintiff's claim for the $90,000, allegedly due on the licensing agreement, is rejected.

**B.** Defendants have met their burden of proving that plaintiff agreed to return the $10,000, if the business was not successful. As the business is not successful, defendant is entitled to a judgment against plaintiff in the amount of $10,000, together with interest and costs.

**C.** Plaintiff has not met its burden of proving an entitlement to damages or equitable relief for violation of the Management Services Agreement. Defendants have proven plaintiff materially breached the Management Services Agreement. Moreover, defendants are not using plaintiff's name, and are not using any unique or confidential information developed by plaintiff.

A judgment will enter.

                                                s/Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge

Dated: August 29, 2006